This case presents a narrow and unique set of factors which has not yet been addressed by this court. Mr. Dereld Humphrey, at the age of 15, a low IQ with a diagnosed learning disability, engaged in two bad decisions. One of those decisions took place on December 10th. He decided to engage in forceful conduct which led to his complicity in robberies and assaults. The next bad decision... Do a little test. One, two, three, four. Test. One, two, three. Thank you. Good? Thank you, Judge. The second bad decision that he made was 24 hours later on the following day. He again engaged in complicit conduct involving violent crimes, robbery specifically. The issue for this court is his first decision, the one on December 10th. On that evening, he decided to engage in criminal activity with some other boys. In doing so, he made the decision to go with them and participate not as the principal but as an accomplice. In whatever activity they decided to take place in a short period of time, he was complicit in it. The issue for this court is whether that conduct on December 10th was one forceful conduct or two. If it was one forceful conduct, then Mr. Humphrey should not be labeled an on-career criminal. As it stands, he was labeled an on-career criminal for two decisions that he made in 24 hours at the age of 15. Relevant to that question, whether it was one forceful conduct or two on December 10th, are several factors that this court considers. The number of victims involved, the location, the motivation of the crimes. In this case, the age of Mr. Humphrey, his status as a juvenile, as well as the fact that he was acting with others rather than acting on his own. Several cases have been examined in this circuit that have decided that many crimes are one forceful conduct. Those cases, United States v. Petty, United States v. Lilly, for example. In Petty, there were six robberies that took place within one, I believe, restaurant or bar. And this court held that those six robberies were only one forceful conduct. Similar to that, Mr. Humphrey's decision on December 11th, excuse me, 10th, to engage in complicit conduct was but one forceful conduct. He and his co-defendants, one of the co-defendants, decided they were going to go out on the street and find some money. They robbed one individual and then continued on their course, robbing another individual, a couple of blocks later and between 10 and 15 minutes later. This was but one forceful conduct. Certainly, the Armed Career Criminal Act doesn't target whether a crime is heinous or whether a forceful conduct is lengthy or short. It targets repeat offenders. And because it targets repeat offenders, this court, as well as other courts, are mindful about holding two separate occasions to occur so close to each other. And again, what was the time interval between the first and the second? 10 to 15 minutes, Your Honor, approximately. And two to three blocks. Everyone was on foot, so they were walking. One wonder, let's see, who were they? What about those other factors you mentioned? His status as a juvenile, is that a factor? It is, Your Honor. Everybody's money has not been examined, which makes this case unique. Is it likely that the members of Congress anticipated that cases like Mr. Humphrey's would arise? The answer is no. They could possibly think of all possible cases. That's correct, Your Honor. To what extent do we take it into account? To what extent do we take it into account? The fact that he was a young, what, 15 years old? It does come into this case because this is to target repeat offenders. And because this court has held that two occasions can occur within minutes of each other, those can be separate occasions. That's been held in other cases. The defendant's state of mind becomes relevant when determining whether it's one occasion or two. And this court, as well as other courts, have been mindful to examine what the defendant is thinking to determine if he's committing one or two distinct aggressions or one or two courses of conduct. Well, you mentioned that. There seem to be some terms of art in our cases. One, they reflect a distinct aggression. In this case, a better argument could be made against the gunman, Your Honor. But Mr. Humphrey was not a gunman, and his quote in his guilty plea was, I knew what was fixing to happen, and I just stood there, and I got some of the money. His decision to engage in this conduct was but one decision, a very poor decision. Arguably, you could infer from someone pointing a gun or shooting that that person had a state of mind to do that act. Someone who's engaged in an accomplice liability, which is another issue that is unique in this case, when trying to determine whether it's one or two courses of conduct, the fact that he's an accomplice has not yet been considered either. So as a juvenile accomplice, we can't ignore the science of Miller in this case. Certainly, Congress may not have anticipated this issue, but they did ask that these crimes be limited to severed occasions. And because the law states they should be severed occasions, this Court, in the past and in this case, does look at what the defendant would be thinking to determine whether these are two severed occasions or one. Certainly, multiple crimes can take place over one occasion. So that's where the state of mind comes in, is in determining whether we hold him accountable for two severed occasions or only for one. Another term of art in our cases, I think, and we'll obey as well as others, was there a lack of substantive continuity here, whatever that means. Substantive continuity. Substantive continuity, I would suggest, means if you look at the actor, whether the actor's actions are continuous. In this case, it's difficult to look at the actor because we're talking about an accomplice liability. Certainly, he engaged and he continued down the course with the gunman, but he was not the actor. Mr. Humphrey wasn't. He was certainly responsible for this decision. He was held responsible under Missouri law. And the government appoints two cases that say accomplice liability, principal liability, it's all the same. That's true with regard to punishment, with regard to mens rea, and the way that it's treated under the law. But this is a different analysis. This is determining whether this defendant committed one course of conduct or two. And Miller says it doesn't matter if it's an accomplice, particularly if it's a juvenile accomplice. And in light of Miller, that is simply a factor that can't be ignored in this analysis. His conduct, Your Honor, was continuous, as Jerome Humphrey's was. He continued to follow the other courts and engage in whatever they were going to engage with. Much like the petty, the defendant went in to rob someone and it was opportunistic. He robbed everyone he saw. These gentlemen did the same thing, but they didn't make good their escape. They didn't run away. They continued down the course of doing the same thing. This was but one course of conduct. I will, if it's okay, I will. What happened to him as a juvenile? Did he receive the prison sentence or not? He served 15 years in the Missouri Department of Corrections after being certified as an adult. How much of that time did he serve? It's irrelevant, perhaps, but how much of that time did he serve? He certainly didn't serve 15 years. Eighty-five percent, Your Honor, though, because he served a lot of time as far as 85 percent. This is irrelevant, too, but it's interesting. How long had he been out on the streets, as it were, before he was found with this weapon? Less than a year, Your Honor. Well, you have some time left. Thank you, Your Honor. We'll hear from the government. Mr. Bird, good morning. Good morning, Your Honor. May it please the Court. Judges Holman, Judge Biden, Judge Shep, counsel. Mr. Harrell was 32 years old in July of 2012 when he was caught carrying a 9mm pistol loaded with 12 rounds in a holster. He had been released just six months from prison prior to the sentencing date. It's not a year, it's six months. After serving a 15-year sentence for the violent felonies, three violent felonies that encompass a 10-count indictment with three separate incidents, he was arrested, charged, and put guilty to being a felon. Thank you. Thank you. He was charged as a felon in possession of a weapon under 922G and in certain situations under 18 U.S.C. 924E. If you have been convicted of three previous convictions of a violent felony or serious drug offenses, and the important language here, that they were committed on occasions different from one another, then you are eligible for the enhanced punishment of a 15-year mandatory minimum. Congress passed the criminal statute to protect the public from the continuing crimes of violent felons such as Mr. Harrell. So let's talk about the underlying conviction, the three separate incidents for which he was convicted and served by a state trial as an adult and pled guilty. Up in a 10-count indictment, the first of four counts dealt with an assault first, a tech robbery first, and armed criminal action on a male victim. Fifteen minutes after that, he arrived by feeding him. He was charged with robbery first, armed criminal action, taking her money and her food stamps. The next day, on December 11th, about 24 hours after the first incident, he attempted to rob another female. She was pistol whipped in the head and in the eye during the robbery. Humphrey does not dispute that these are all violent felons. Humphrey, in the brief, does not dispute that the third incident was committed on an occasion separate from the first two incidents. The only issue before the court, as Ms. Morrison correctly points out, is whether that first incident is committed on an occasion different from the second. Whether it counts one through four is separate. A separate incident counts five and six. So let's talk about the facts specifically with regards to this 10-count indictment. On December 10th, 1995, at 6.20 p.m. This is all established by the police transcript. At 5630 Page, a male victim was approached by the descendant and at least one other person. You know this by way of the police transcript. A demand for money was made on this male victim, an older gentleman. When he either resisted or hesitated, he was shot in the arm. The bullet went through his arm and blasted into his chest. What we know from the police transcript is that Mr. Hill, at a minimum, admitted to being present at the scene and to splitting the proceeds from that robbery afterwards. Now, Ms. Morrison portrays the defendant as just acting with other boys and making the other boys do most of the incident. However, in the PSR, in Paragraph 33, it sets out the facts in more detail than just the police transcript with regards to this particular incident and what she was unobjected to by a defense counsel. I think she objected to the application, not the underlying facts. But from the PSR in Paragraph 33, what is also established is the defendant was just there with one other person, and the defendant was the gunman who actually pulled the trigger and shot the second victim. Fifteen minutes later, it's established by the police transcript, at 6.35 p.m., three blocks away from the first incident, victims are unrelated. A female victim is at 1211 Sharp Place, and she is robbed of her money and food stamps. In the police transcript, it's established the defendant was present, he knew in advance that the robbery was to occur, and he participated in the robbery. So we have a separation of time of 15 minutes, location of three blocks, and the victims were completely unrelated, which is what the case law directs us to look at. In Chappelle, it says that crimes occurring even minutes apart qualify as distinct criminal episodes if they have different victims and are committed in different locations, which is exactly what we have here. Again, it says that crimes committed in rapid succession are still committed on different occasions when they reflect distinct aggressions. Clearly, we have two distinct aggressions here. The victims are unrelated. I think Judge Molden, you asked a question in Willoughby. The language that was used was what was substantive continuity, one of the things that the court looks at in Willoughby. And it goes on in Willoughby, which is a case that the defendant relies on. It says in a violent felony context, you look at substantive continuity means different victims, different aggressions. The defense points out two cases and relies upon two cases in single cases. This is one instance. They rely on Willoughby. In Willoughby, we're talking about an undercover police officer entering into a drug house with a confidential informant, wherein they purchase simultaneously drugs from the defendant. The defendant hands the drugs to the confidential informant, takes the money, and then hands the drugs to the undercover officer that takes the money. The sales were simultaneous, and the court concurrently ruled that that was one incident. Here, they're separated by 15 minutes. The defendant, Mr. Harrell, had left the scene, the first scene, the first robbery scene where the victim was shot. He had 15 minutes, an opportunity to cease and desist. He wasn't being chased by the police. This wasn't a continuing episode. This was an incident where he escaped from the first one, knowing that someone had been shot, and continued to walk with at least as one of the gentlemen three blocks away, 15 minutes later, until he arrives at the second email of her food stamps. She also cites in her brief the pending case, and that involves the robbery of an individual that goes into a restaurant and robs six people inside a restaurant at the exact same time, which is completely distinguishable from our case. When you go into a restaurant and rob six individuals at one time inside a restaurant, that's not the same that Mr. Humphrey did here, where he robs one person at one location and then travels three blocks away, and 15 minutes later, robs the second individual. What is more appropriate is the right case that's cited in the United States brief, and in the right case, which is an unpublished opinion, it talks about the fact that in that particular case, I would point out that the defendant was a certified juvenile in that particular case, and it talks about how that defendant had committed two robberies within 10 minutes, which is not what we have here in our case. It's 15 minutes and two robberies. In the right case, it was two robberies in 10 minutes, and the court found that that was committed on occasions separate from each other, thereby making him an armed murder criminal. There are other cases that the government has cited. In Hamill, there were two assaults committed within 25 minutes, and the court found that those were separate occasions, committed on separate occasions. One of the assaults occurred inside the tavern, and the second assault, it was a stabbing inside the tavern. The second assault occurred 25 minutes later outside the tavern when he shot at another individual who was attempting to call the police. I would also point out Drew, which talked about three robberies committed on separate households within an hour, and they were all committed on separate occasions. Greg was also dealt with two robberies within 25 minutes. So clearly, a circuit precedent makes Mr. Humphrey an armed murder criminal, and I would ask the court to affirm the district court's determination that Mr. Humphrey was, indeed, an armed murder criminal. Thank you. With regard to the three-sentence report indicating that the defendant was a gunman, there is a paragraph that indicates that the police report states that he was, that was the police's original theory, is that he was a gunman. I can't dispute that the police report say that. However, the police reports are only evidence. In a guilty plea transcript, when the court accepted and the prosecutor amended the charges to reflect acting with another, that's the kind of behavior he took. It's being complicit, not having a gun. He specifically denied that after he heard the judge and the prosecutor accept that. With regard to Wright, which is somewhat similar to this in that it's a juvenile, the court, in its limited opinion, did indicate that one of the main reasons that this was two separate occasions was because the defendant drove between the locations, which indicates he made a conscious decision to get into a car and travel much farther than Mr. Humphrey while he had less time because he was driving. That was a very important factor in that case that we don't have in this case. Mr. Humphrey said that he followed along with the other boys on their course. They had already been on. They didn't rush away. They continued down the block. That's indicated by 10 to 15 minutes and only traveling two or three blocks. Now, if they do that, it's going to look good. That's not what this statute is about. That's not what the Armed Career Criminal Act is targeting. It's not saying you want to find the most heinous crimes for the longest course of conduct. This is a repeat offender statute, and it was created to target repeat offenders. In order to label someone a repeat offender, this court and other courts are mindful and conscientious to look at the actions and state of mind of the defendant between those two acts to determine if they are voluntary. Now, what occurred on the second of these events? I apologize. What occurred on the part of the second event? Basically, your argument was he was what? Passive observer? He was not a passive observer. He admitted he participated in this crime, but he made one criminal decision, and that was to go with these guys and rob some people on the street and take advantage of the money. The defendant doesn't have the option of picking and choosing what the effect of his decision is going to be. As a person of age 15, he's not sitting down. He doesn't know anything about the Armed Career Criminal Statute, obviously. It's a question of what he did, whether under a case law, what he did qualifies him or subjects him to the Armed Career Criminal Statute. That's correct. I'm not going to be trivializing what he did on the second occasion to say that it was not a separate occasion. That's a distinctive aggression. No, Your Honor. Certainly, he committed a very serious crime. There's no question about that. Maybe. I'm sorry? Why shouldn't that be the end of it as far as our analysis? Maybe. Congress adopted his act. Maybe they should have thought it through more carefully, We're not here to amend the argument. Your Honor, committing a very serious course of conduct should be taken seriously. It was. He was sentenced to 15 years. It's certainly important to take into account all the factors of his murder, regardless of his history and about his actions, in determining within the range of punishment up to 10 years what sentence he should receive. My train of thought is whether he's not aware of what happened here. Did he actually shoot one of the prisoners? No, Your Honor. He did not hold the gun. And indeed, he didn't. But the person was shot. Correct. That's correct, Judge. And some of them just avoided the bullet. That's correct as well.  and avoided some of this violence to commit the robbery. Again, you mentioned in your opening argument, and maybe I didn't get that at the hearing, did you cite a Miller case? No, Your Honor. Because he's a juvenile in this case, Is that in the brief? Yes, Your Honor. It's simply a factor that has to be taken into account based on the science of Miller in determining how many decisions he made and what his ability to make those decisions was. I was reading the brief. Oh, sure. Miller was in that one, I think. Yes, sir. Okay. In reading your brief, I pick up that I can't have an argument that building on Miller, when you argue for a criminal act, should not be an act. Does that have an argument that you don't? No, Your Honor. In fact, my intent in my brief was to distinguish this claim from those arguments. I understand that argument has been raised and rejected in the Fourth and Eleventh Circuit. I don't make that argument to this Court today. Even if this Court would join those circuits, the argument that I make is that his status as a juvenile is a relevant factor to taking into consideration and reanalyzing whether this was one or two distinct aggressions. I don't know if it should be a lawyer. In a way, is it your plan to use the term poster child for the effect of this happening? You seek to learn nothing, but I guess that's not our job to decide whether you are a good prisoner, right? Well, Your Honor, I think that his age and his learning disability means a lot. He also wanted to play. In making that determination, I think those women who play decided whether it was one or two courses of conduct, and I think they might go to his ability to learn as well, whether or not at this point. Thank both sides of the argument. The case is submitted, and we will take it under consideration.